UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN F. DEMPSEY, for himself and as chairman of a committee on preservation and dredging for the Board of Governors of Shark River Beach & Yacht Club, | : : : : : : | Civil Action No. 15-2847 (FLW)(LHG) **OPINION** |
| Plaintiff, | : : |  |
| v. | : : |  |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF DEFENSE, UNITED STATES DEPARTMENT OF THE ARMY CORPS OF ENGINEERS, | : : : : : : |  |
| Defendants. | : : |  |

**WOLFSON, United States District Judge**:

This matter comes before the Court on a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), filed by Defendants the United States of America, the United States Department of Defense, and the United States Department of the Army Corps of Engineers ("USACE"), (collectively "Defendants") seeking dismissal of the Complaint filed by *pro se* Plaintiff John F. Dempsey ("Dempsey" or "Plaintiff") for lack of subject matter jurisdiction based on sovereign immunity. For the following reasons, Defendants' motion to dismiss is granted.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the Complaint. Dempsey owns property located on the Shark River in Monmouth County, New Jersey, and serves as the Chairman of a committee of the Board of Governors of the Shark River Beach & Yacht Club. Compl. ¶ A. The Shark River is allegedly used for business, transportation, and recreational activities, and maintains a federally-protected "wet lands," where migratory water fowl rest and reproduce. Compl. ¶ B. Dempsey

1

alleges that the Shark River is also in "deep distress" due to pollution. Compl. ¶ C. Dempsey alleges that although the USACE is granted the power and the duty to dredge "any navigable water way," including the Shark River, the USACE has allegedly "failed to take any action toward relieving the conditions of pollution on the Shark River[.]" Compl. ¶¶ E, F.

On April 22, 2015, Plaintiff brought suit against Defendants seeking a judgment declaring that:

> [T]he SHARK RIVER of Monmouth County, New Jersey is a Navigable Waterway and is within the control and jurisdiction of the United States Department of Defense, Department of the Army Corps of Engineers, AND, further declaring that the said SHARK RIVER is in a state of pollution and a danger to public health and safety and to the continued use as a navigable waterway for business and pleasure and a threat to the "Protected Wet-Lands" AND therefore action should be taken to correct said situation by whatever means that is necessary and sufficient to accomplish that purpose.

On August 14, 2015, in lieu of Answer, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) based on a lack of subject matter jurisdiction, arguing that Defendants are entitled to sovereign immunity.

## II.     STANDARD OF REVIEW

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1). Once a Rule 12(b)(1) challenge is raised, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.* Here, the matter concerns a facial attack to subject

matter jurisdiction based on the defense of sovereign immunity. *See Perez v. New Jersey*, No. 14-4610, 2015 U.S. Dist. LEXIS 92504, at *10 (D.N.J. July 15, 2015) ("[T]he State Defendants' motion asserts the defense of sovereign immunity based on the facts as pleaded in the Second Amended Complaint and is thus a facial attack.").

### III. DISCUSSION

It is well-settled that the United States of America is generally immune from suit absent an explicit waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "Sovereign immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and extends to governmental agencies of the United States, as well. *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). The United States' consent to be sued cannot be implied – it must be "unequivocally expressed," and waivers of sovereign immunity must be "strictly construed" in favor of the government. *United States v. Idaho*, 508 U.S. 1, 6-7 (1993) (citations omitted); *FMC Corp. v. U.S. Dep't of Commerce*, 29 F.3d 833, 838-39 (3d Cir. 1994).

Plaintiff's complaint cites only to the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. §§ 401, *et seq.*, as the statutory authority for his claim. However, Plaintiff has failed to identify any provision of the RHA which would operate as a waiver of sovereign immunity by Congress.[1]

---

[1] Although the Complaint cites only to the RHA, Compl. p. 2, Plaintiff also asserts in his opposition brief that the USACE regulates Shark River pursuant to the Clear Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq*. While Section 313 of the CWA provides a limited waiver of sovereign immunity for federal facilities engaging in acts of water pollution, this provision is inapplicable in this matter as there is no allegation that Defendants "engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants," 33 U.S.C. § 1323(a), but rather that they are engaged in regulating the Shark River and have taken no action to alleviate pollution that is already present. *See, e.g.*, *City of Olmsted Falls v. EPA*, 233 F. Supp. 2d 890, 897 (N.D. Ohio 2002) ("On its face, Section 313 [of the CWA] acts to waive sovereign immunity only where an arm of the federal government is an alleged polluter."); *Colo. Wild, Inc. v. U.S. Forest Serv.*, 122 F. Supp. 2d 1190, 1194-95 (D. Colo. 2000) (no waiver of sovereign immunity under Section 313 [of the CWA] where plaintiffs did not allege that Forest Service was engaged in polluting at a federal facility).

3

*See Ikelionwu v. United States*, No. 06-0625, 2008 U.S. Dist. LEXIS 84530, at *6 (D.N.J. Oct. 17, 2008) ("[O]nly Congress can waive the United States' sovereign immunity."), *aff'd*, 324 F. Appx. 152 (3d Cir. 2009).  Nor can Plaintiff rely on the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, or the federal question statute, 28 U.S.C. § 1331, as neither abrogates sovereign immunity.  *See NVE, Inc. v. HHS*, No. 04-0999, 2004 U.S. Dist. LEXIS 30876, at *9 (D.N.J. Aug. 4, 2004) ("It is also well-established that the Declaratory Judgment Act does not grant jurisdiction or waive sovereign immunity, but merely provides a remedy.") (*citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)), *remanded on other grounds*, 436 F.3d 182 (3d Cir. 2006); *Industrial Highway Corp. v. Danielson*, 796 F. Supp. 121, 125 (D.N.J. 1992) ("Section 1331, the federal question statute, does not in itself abrogate the United States' sovereign immunity."), *aff'd*, 995 F.2d 217 (3d Cir. 1993).

Plaintiff's inability to identify an express and unequivocal waiver of sovereign immunity by Congress requires dismissal of the Complaint.  *See Global Fin. Corp. v. United States*, 67 F. Appx. 740, 742 (3d Cir. 2003) ("Plaintiff 'bears the burden of showing an unequivocal waiver of immunity.'") (quoting *Baker v. United States*, 817 F.2d 560, 562 (9th Cir.), *cert. denied*, 487 U.S. 1204 (1988)).  Nevertheless, Plaintiff advances two arguments in support of his theory that Defendants have waived sovereign immunity:  (1) Defendants have waived jurisdiction under the doctrine of constructive consent to suit; and (2) Defendants entered into a contract to dredge the Shark River.  As discussed below, neither of these arguments is correct.

First, Plaintiff argues that since Defendants have "engaged in regulating the Shark River," under the RHA and CWA, they have waived sovereign immunity pursuant to the doctrine of constructive consent to suit, as set forth in *Parden v. Terminal Railroad of Alabama State Docks Department*, 377 U.S. 184 (1964).  In *Parden*, the Supreme Court held that a state could implicitly

waive its sovereign immunity by operating an interstate railroad when Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court, as provided by the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60.  377 U.S. at 184-85, 192.  However, the Supreme Court has expressly overruled *Parden* and rejected the doctrine of constructive consent to suit, finding that it cannot be squared with the principle that a state must unequivocally consent to suit to waive sovereign immunity.  *See College Sav. Bank v. Fla. Prepaidpostsecondary Ed. Expense Bd.*, 527 U.S. 666, 680 (1999).  Moreover, this case is also distinguishable from *Parden* because there is no analogous statutory provision in the RHA or CWA requiring Defendants to consent to suit as a condition of "regulating" the Shark River.

Second, Plaintiff argues that the USACE "may also be considered" to have entered into a contract to dredge the Shark River based on a letter dated March 30, 2014, from a Deputy Chief of the USACE Operations Division to the Director of Public Policy of New Jersey Congressman Christopher Smith, in which the USACE indicated that "[t]he Federal Navigation Channel in Shark River, NJ is scheduled for maintenance dredging starting in September of this year [2014]." However, even if this Court considers this letter on a motion to dismiss,[2] it clearly does not change this Court's analysis.

While Congress has abrogated sovereign immunity for breach of contract actions against the federal government in the Tucker Act, 28 U.S.C. § 1491, *see United States v. Mitchell*, 463 U.S. 206, 216 (1983), it does so only for suits for money damages.  *See Security Sav. Bank, SLA v. Director, Office of Thrift Supervision*, 798 F. Supp. 1067, 1077-79 (D.N.J. 1992); *see also*

---

[2] The Court notes that the March 30, 2014 letter is not referenced in the Complaint or attached as an exhibit thereto.  In fact, it was not even attached as an exhibit to a certification in opposition to Defendants' motion to dismiss.  Rather it was included as *part* of Plaintiff's brief in opposition to Defendants' motion to dismiss.

*United States v. Certain Land Situated in the City of Detroit*, 361 F.3d 305, 307 (6th Cir. 2004) ("No statute waives the United States' sovereign immunity from contract claims for declaratory or injunctive relief in district court."), *cert. denied*, 543 U.S. 1120 (2005). In this matter, Plaintiff's complaint contains no cause of action for breach of contract and requests only declaratory relief, not money damages. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

Moreover, any amendment of the Complaint to include a cause of action for breach of contract seeking money damages would be futile, *see Citizens Bank of Pa. v. Reimbursement Techs.*, 609 F. Appx. 88, 95 (3d Cir. 2015), because the language in the March 30, 2014 letter relied upon by Defendant only informed Congressman Smith's Director of Public Policy about the upcoming schedule the USACE had set for dredging the federal channel of the Shark River. In fact, the letter represents a *rejection* of an inquiry by "[l]ocal interests" as to whether "the State boat channels west of the federal channel in the Shark River could be combined with the federal dredging project" already scheduled. In short, the March 30, 2014 letter lacks every element of a valid contract under New Jersey law: offer, acceptance, and consideration. *See Contl. Bank of Pa. v. Barclay Riding Acad., Inc.,* 93 N.J. 153, 170, *cert. denied*, 464 U.S. 994 (1983).

Finally, because the Court finds that Defendants possess sovereign immunity, it need not address whether Plaintiff, as a *pro se* plaintiff, may represent the Shark River Yacht Club. *See S.B. ex rel. A.B. v. Trenton Sch. Dist.*, No. 13-949, 2013 U.S. Dist. LEXIS 167073, at *11 (D.N.J. Nov. 25, 2013) ("The court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become

moot.") (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

Dated: October 29, 2015

/s/ The Honorable Freda L. Wolfson

United States District Judge